# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JASON ABRAHAM and
ANDREA ABRAHAM,

Plaintiffs,

v.            Case No. 18-CV-1647

JETSMARTER INC. and
SAM KIMMELL,

Defendants.

---

# DECISION AND ORDER

---

## INTRODUCTION

Plaintiffs Jason and Andrea Abraham filed this action against defendants JetSmarter Inc. and Sam Kimmell, alleging violations of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. § 100.18), common law fraud, breach of contract, breach of good faith, and punitive damages. (ECF No. 1.) Defendants move for dismissal in favor of mandatory arbitration pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. §§ 1-16. (ECF No. 12.) All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 17.) Defendants' motion is ready for resolution.

## FACTS

In late 2016 the Abrahams became interested in a membership with JetSmarter. (ECF No. 15, ¶ 2.) On December 27, 2016, Mr. Abraham spoke with JetSmarter's sales representative Sam Kimmell. (ECF No. 15-2 at 23.) Kimmell stated that, if the Abrahams enrolled in a JetSmarter membership before January 1, 2017, they would receive membership benefits, including but not limited to complimentary flights over three hours in flight time with no additional fees, and they would be allowed to book a minimum of four seats on a large jet or a minimum of two seats on a "light" jet. (ECF No. 1, ¶¶ 8-9.)

After some price negotiation, Mr. Abraham agreed to purchase JetSmarter memberships for himself and his wife, plaintiff Andrea Abraham. (*See* ECF No. 15-2 at 2-4.) Kimmell sent Mr. Abraham an email containing a hyperlink to access the Abrahams' electronic Membership Invoice. (ECF No. 15-2 at 2-3.) Below the itemized charges, the Membership Invoice contained a "toggle button" next to the phrase, "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT":



**I ACCEPT** TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT

The Membership Agreement may be amended or modified from time to time and available for review at http://jetsmarter.com/legal/membership. It is the Member's sole responsibility to review and abide by all of the terms and conditions of the Membership Agreement and all applicable service terms and conditions, as amended from time to time. The Membership Fee is an access fee for use of the Service, is not a payment for air transportation, and is non-refundable, except as specifically provided herein, even if Member fails to utilize the Program or the Services. The Membership Fee is not amortized over time and not based on Member's ability to purchase or use the Service.

 (ECF No. 15-3 at 2.) A hyperlink was embedded within the phrase, "TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT," which, when clicked, would

have directed the Abrahams to a webpage displaying a complete Membership Agreement, which included an arbitration provision. (ECF No. 15, ¶¶ 5, 7.) The arbitration provision, entitled "Dispute Resolution," stated in relevant part:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association, under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, by a sole arbitrator. The place of arbitration shall be Broward County, Florida.

(ECF No. 15-5 at 10.) The Abrahams were required to click the "toggle button" in order to pay for their JetSmarter memberships. (*Id.*, ¶¶ 4, 6.)

On May 9, 2017, Kimmell communicated to Mr. Abraham that "JetSmarter was offering a three-year membership at a discounted rate with the same benefits included in their annual membership plan if members pre-purchase all three years." (ECF No. 1, ¶¶ 11-12; ECF No. 15-6 at 8-10.) The Abrahams accepted the offer and pre-purchased two, three-year memberships, normally priced at $45,000.00 each, for a discounted rate of $21,877.28 per membership. (ECF No. 1, ¶ 13.) As before, Kimmell emailed Mr. Abraham an email containing two hyperlinks, one corresponding to the Membership Extension Invoice for Mr. Abraham and the second corresponding to the Membership Extension Invoice for Mrs. Abraham. (ECF No. 15-6 at 2.) Once clicked, the hyperlinks would have taken the Abrahams to an invoice that was nearly-identical to their original invoice. (ECF

Nos. 15-7, 15-8.) As before, in order to pay for their JetSmarter Membership Extensions, the Abrahams were required to click the "toggle button" next to the phrase, "I ACCEPT TERMS AND CONDITIONS OF MEMBERSHIP AGREEMENT." (ECF No. 15, ¶ 10.)

After enrolling and extending their memberships, the Abrahams discovered on or about September 5, 2018, that, in addition to their membership fees, there would be a required fee per flight in order to use the flights offered by JetSmarter. (ECF No. 1, ¶ 15.) They also discovered that they were now required to book a minimum of approximately ten seats in order to fly on a large jet, and that the option to book seats on a "light" jet was no longer available. (*Id.*, ¶ 17.) The Abrahams allege that these new conditions and requirements are contrary to the express representations made by JetSmarter and Kimmell. (*Id.*, ¶ 18.)

On October 16, 2018, the Abrahams filed this action. (ECF No. 1.) On November 28, 2018, the defendants moved to dismiss the complaint for improper venue, alleging that the Abrahams are required to arbitrate their claims in Broward County, Florida before the American Arbitration Association. (ECF No. 12.)

## STANDARD OF REVIEW

Since the arbitration clause calls for arbitration outside the Eastern District of Wisconsin, a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure is the proper vehicle for dismissal of this action. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). When ruling on a motion to

dismiss under Rule 12(b)(3), "the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Id.* at 809-10 (quoting *Cont'l Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)). However, the district court shall assume "the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. Sirva, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (emphasis in original).

A party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact as to the existence of the purported arbitration agreement. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

## ANALYSIS

The Federal Arbitration Act guides the enforceability of arbitration agreements by strongly favoring parties' contractual agreements to arbitrate disputes. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Arbitration may be compelled under the Act if the following three elements are shown: (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich*

*Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *see* 9 U.S.C. § 4. An arbitration agreement will be upheld as valid unless defeated by fraud, duress, unconscionability, or another "generally applicable contract defense." *Rent-A-Ctr, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010); *see* 9 U.S.C. § 2.

Defendants argue that (1) the Abrahams assented (twice) to the terms of JetSmarter's Membership Agreement, which includes an arbitration provision (ECF No. 13 at 9); (2) "[t]his dispute falls squarely within the scope of the arbitration provision" (*id.* at 16); and (3) the Abrahams refuse to arbitrate and sued in federal court (*id.* at 17). In response, the Abrahams do not deny that their claims fall within the scope of the arbitration agreement and that they have refused to arbitrate. (*See* ECF No. 18 at 19 (acknowledging that "Plaintiffs' claims fall within … the arbitration clause" and stating that "Plaintiffs do not deny that they have at this time refused to arbitrate").) Their argument is that they "did not accept a written agreement to arbitrate" because "JetSmarter's arbitration provision is unconscionable and [they] lacked adequate notice to accept JetSmarter's membership terms." (*Id.* at 5.)

## A. Notice

The Abrahams contend that they lacked adequate notice of JetSmarter's Membership Agreement and, by extension, the arbitration provision. (ECF No. 18 at 16.) They argue that they "were pressured to accept the first invoice before January 1, 2017," or "face increased rates and lesser benefits," and the second invoices "were executed in a

similar rush to obtain the enhanced benefits of prepaying multiple years of the JetSmarter membership." (*Id*. at 16-17.) As a result, they contend that "there was no meaningful meeting of the minds to permit a valid assent to the terms of the Membership Agreement." (*Id.* at 17.)

A dispute concerning contract formation "is generally for [the] courts to decide," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010), and "is governed by state law." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741-42 (7th Cir. 2010). The first question the court must answer is which state's law governs the determination of whether the Abrahams assented to the terms of the Membership Agreement. When federal courts obtain jurisdiction through diversity of citizenship, they ordinarily apply "the substantive law of the state in which the district court sits, including choice of law rules." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (internal citations omitted).

However, the Membership Agreement contains a choice of law provision which states that "all the rights of the parties hereunder shall be governed by, construed and enforced in accordance with the laws of the State of Florida without reference to the conflict of law principles of any jurisdiction." (ECF No. 15-5 at 10-11; ECF No. 15-11 at 12.) The Court of Appeals for the Seventh Circuit has not decided whether, when determining whether parties have entered into a binding contract, the court must apply the law of the state set forth in the contract's choice of law provision. Yet several other

circuits have recognized a logical flaw inherent in following a contractual choice of law provision *before* determining whether the underlying contract is valid. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract."); *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 661 n. 9 (10th Cir. 2006) (referring to "the logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid."); *see also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, No. 07 C 1707, 2008 WL 867224, at *3 (N.D. Ill. March 7, 2008) ("Only if the court finds a valid contract may it turn to the choice of law provision in the Agreement …."). Because the court finds this authority persuasive, it will apply Wisconsin law in determining whether the Abrahams assented to the terms of the Membership Agreement.

"Under Wisconsin law, 'whether an offer was accepted is a question of fact.'" *Wells Fargo Business Credit v. Hindman*, 734 F.3d 657, 667 (7th Cir. 2013) (quoting *Hoeft v. U.S. Fire Ins. Co.*, 153 Wis. 2d 135, 144, 450 N.W. 2d 459, 463 (Wis. Ct. App. 1989)). "For 'acceptance of a contract to occur, there must be a meeting of the minds, a factual condition that can be demonstrated by word or deed.'" *Id.* (citing *Zeige Distrib. Co. v. All*

*Kitchens, Inc.*, 63 F.3d 609, 612 (7th Cir. 1995)). "Objective manifestations of assent, rather than subjective intentions, are controlling." *Id.*

Defendants argue that "the Abrahams expressed their agreement to arbitrate by clicking to accept the terms in JetSmarter's Membership Agreement." (ECF No. 13 at 9.) The "toggle button" clicked by the Abrahams is known as a "clickwrap agreement," which "requires an affirmative act on the part of the user to manifest assent—namely, the user's clicking of a button accompanying a statement instructing the user that their click constitutes acceptance to the terms at issue." *CouponCabin LLC v. Savings.com, Inc.*, No. 2:14-CV-39-TLS, 2017 WL 83337, at *4 n. 2 (N.D. Ind. Jan. 10, 2017). Courts have routinely enforced clickwrap agreements. *See e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016) ("Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract."); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Hancock v. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1256 (10th Cir. 2012) ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'"); *see also Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190-91 (D.N.M. 2018) ("Notably, '[f]ederal courts have consistently enforced clauses contained in clickwrap agreements' similar to the one at issue here, where the agreement is 'presented via a

hyperlink to a page separate from the one containing the box or button manifesting assent.'").

While the Abrahams do not dispute the enforceability of clickwrap agreements, they argue that they were "pressured to accept" and "did not have the luxury to carefully review the terms of the vast Membership Agreement":

> [Kimmell] stated in his email communications on Wednesday, December 28, 2016, at 3:25 PM, that the discounted membership rate and enhanced benefits would only be available for three more days, ending on Saturday, December 31, 2016. This short deadline put the Plaintiffs under pressure to join JetSmarter now or face increased rates and lesser benefits. Likewise, the second invoices for the Plaintiffs were executed in a similar rush to obtain the enhanced benefits of prepaying multiple years of the JetSmarter membership. [On Wednesday May 10, 2017, at 2:56 PM, Kimmell stated that in order to receive a $1,000 flight credit, the Plaintiffs need to complete the transaction by Friday, May 12, 2017.] Consequently, the Plaintiffs did not have the luxury to carefully review the terms of the vast Membership Agreement and incorporated documents, such as the Terms of Use that were not included in the hyperlinks provided. Objectively, this means that once the Plaintiffs had access the [sic] Membership Agreement they lacked the means to adequately review said agreement and consequently there was no meaningful meeting of the minds to permit a valid assent to the terms of the Membership Agreement.

(ECF No. 18 at 16-17.) (Internal citations omitted.)

In *Deminsky v. Arlington Plastics Machinery*, 259 Wis. 2d 587, 657 N.W.2d 411 (2003), the court considered whether an indemnification clause in a sales contract between a manufacturer and a purchaser of a grinding machine was valid and enforceable. *Id.* at 592-93. The clause required the product purchaser, Image Plastics, Inc., to indemnify the manufacturer for liability created by the manufacturer's own negligence or the machine's

defects. *Id.* at 595. Image argued that it lacked the proper notice of the terms of the indemnification clause. *Id.* at 609. The *Deminsky* court held in relevant part:

> [Gregory Harm, the owner of Image,] had time to carefully review the terms, but he chose not to do so. …. Mr. Harm simply chose not to review the contract carefully and such a failure does not warrant relief from his obligations under the contract. Had Harm read the terms, we have no difficulty concluding that he would have ascertained the obligations of the contract terms. Therefore, the form fulfilled the requirement to communicate the nature and significance of the indemnity provision.

*Id.* at 611-12.

Each time the Abrahams agreed to purchase JetSmarter memberships, they had more than a day to review the terms and conditions of the Membership Agreement. Although the Abrahams describe the terms as "vast" and "seventeen large provisions" (ECF No. 18 at 17), a day was more than enough time to scroll through and carefully review each provision of the Membership Agreement. (*See* ECF Nos. 15-5, 15-11.) The Abrahams cannot "close their eyes" to the knowledge accessible to them and "then ask the courts to relieve them from the consequences of their lack of vigilance." *Nauga, Inc. v. Westel Milwaukee Co., Inc.*, 216 Wis. 2d 306, 314-15, 576 N.W.2d 573, 577 (Ct. App. 1998) (quoting *Carney-Rutter Agency v. Central Office Bldgs.*, 263 Wis. 244, 252-53, 57 N.W.2d 348, 352 (1953)).

The Abrahams also argue that they were prevented "from having a meeting of the minds prior to accepting the terms of the Membership Agreement" because "the arbitration provision contained within the Membership Agreement does not fully

enumerate JetSmarter's rights[.]" (ECF No. 18 at 17-18.) The Abrahams point to a provision in the Terms of Use, incorporated in the Membership Agreement, which provides an exemption from mandatory arbitration for intellectual property claims (ECF No. 19-1 at 22). As a result, they argue, they were not fully apprised of all relevant terms in the arbitration clause and, by extension, the Membership Agreement. (ECF No. 18 at 17-18.)

The issue is not whether the Abrahams were "fully apprised of all relevant terms in the arbitration clause[.]" The issue is whether they had notice of the existence of the Membership Agreement, generally, and the arbitration provision, specifically. If they had questions about the arbitration agreement or its scope, they were free to pose them to Kimmel and JetSmarter. But their failure to ask any questions does not somehow mean they lacked notice of the Membership Agreement, including its arbitration provision.

The court concludes that the Abrahams assented to the terms of the Membership Agreement, including the arbitration provision, when they clicked the "toggle button" next to the phrase, "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT."

## B. Unconscionability

Having determined that the Abrahams agreed to arbitrate their claims against JetSmarter, the court must now turn to the Abrahams' argument that the arbitration agreement is unconscionable. (*See* ECF No. 18 at 5-15.)

An arbitration agreement "is a type of forum selection clause." *Jackson v Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). When determining the enforceability of a forum selection clause, the Seventh Circuit has held that the court shall apply the law designated in the contract's choice of law provision. *Id.* at 774-75 (citing *Abbott Laboratories v. Takeda Pharmaceutical Co.*, 476 F.3d 421 (7th Cir. 2007)); *see IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) ("*Abbott Laboratories* … held that the validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute."). As stated above, the Membership Agreement provides that "all the rights of the parties hereunder shall be governed by, construed and enforced in accordance with the laws of the State of Florida without reference to the conflict of law principles of any jurisdiction." (ECF No. 15-5 at 10-11; ECF No. 15-11 at 12.) Therefore, the court will apply Florida law in determining whether the arbitration agreement is unconscionable.

"Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain an unjust and undeserved advantage which it would be inequitable to permit him to enforce." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014) (internal quotation and citation omitted). "The absence of meaningful choice when entering into the contract is often referred to as procedural unconscionability, which 'relates to the manner in which the contract was entered,' and the unreasonableness of the terms is often referred to as

substantive unconscionability, which 'focuses on the agreement itself.'" *Id.* at 1157-58 (quoting *Powertel Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)).

Under Florida law, "when a litigant seeks to avoid enforcement of a requirement to proceed with arbitration, pursuant to the parties' prior agreement, the challenging party must establish that the arbitration agreement is *both* procedurally and substantively unconscionable." *Basulto*, 141 So. 3d at 1158 (emphasis added). However, Florida has adopted a "balancing, or sliding scale, approach," which allows "'one prong to outweigh another provided that there is at least a modicum of the weaker prong.'" *Id.* at 1159 (quoting *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 39 (Fla. 4th DCA 2005)). "This approach recognizes that, although the concept of unconscionability is made up of both a procedural component and a substantive component, it often involves an evaluation in which the two principles are intertwined." *Id.* at 1160.

### 1. Procedural Unconscionability

"The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering into the contract." *Basulto*, 141 So. 3d at 1157 n. 3 (citing *Kohl v. Bay Colony Club Condo., Inc.*, 398 So. 2d 865, 868-69 (Fla. 4th DCA 1981)).

When determining whether a contract is procedurally unconscionable, Florida courts consider the following:

(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the

terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Id.* (quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) (internal citations omitted)).

The Abrahams have not presented evidence that the arbitration provision is procedurally unconscionable. Mr. Abraham negotiated with JetSmarter over the course of four days regarding the Abrahams' initial JetSmarter memberships, and over the course of two days with regard to their three-year membership extensions. (*See* ECF Nos. 15-2, 15-6.) These negotiations show that Mr. Abraham had a significant amount of bargaining power: he was able to successfully negotiate $3,000 of flight credit (ECF No. 15-2 at 2-4; ECF No. 15-6 at 2-4) and a waiver of Mrs. Abraham's $3,500 initiation fee. (ECF No. 15-2 at 5, 11-15). Furthermore, nothing was forcing the Abrahams to deal with JetSmarter; they could have walked away prior to purchasing the memberships if they did not like the terms. *See Falcon v. CarMax Auto Superstores, Inc.*, No. 18-20268-CV-WILLIAMS/TORRES, 2018 WL 3699336, at * 5 (S.D. Fla. May 18, 2018) ("[T]here is no basis for us to find that the [contract] should be deemed an unlawful 'adhesion' contract, simply because Plaintiff always retained the ability to walk away from the deal prior to signing."); *Howse v. DirecTV, LLC*, 221 F. Supp. 3d 1339, 1344 (M.D. Fla. 2016) ("[I]t is well-recognized among Florida's courts that 'the purchaser of services [is] free to obtain such services elsewhere' if he or she does not want to agree to a particular seller's terms.")

(alteration in original and internal citation omitted). Moreover, Mr. Abraham's background as an attorney and the plain language of the arbitration provision gave the Abrahams the ability and opportunity to understand the terms of the agreement. *See Robinson v. Anytime Rentals, Inc.*, No. 14-cv-528-FtM-38CM, 2015 WL 4393709, at *3 (M.D. Fla. Feb. 20, 2015) (finding that "there is no evidence that Plaintiff did not have the ability and opportunity to understand the disputed terms of the Agreement" when "[t]he arbitration provision was presented in plain, readily-understandable language").

The Abrahams argue that "JetSmarter presented the invoices in a 'take-it-or-leave-it' fashion" with "no means for [them] to negotiate the terms of the Membership Agreement." (ECF No. 18 at 8.) "However, the presence of an adhesion contract alone does not require a finding of procedural unconscionability." *VoiceStream Wireless Corp.*, 912 So. 2d at 40. There must be an aspect of the agreement, other than its take-it-or-leave-it character, that renders it procedurally unconscionable. *McAdoo v. New Line Transport, LLC*, No. 8:16-cv-1917-T-27AEP, 2017 WL 942114, at *2 (M.D. Fla. March 9, 2017). Moreover, as discussed above, the Abrahams *did* have the opportunity to negotiate the terms of the Membership Agreement.

The Abrahams also argue that the "invocation of [Mr. Abraham's] profession is frivolous" because Mr. Abraham "would be required to not only have the expertise of Florida law but more specifically expertise of the intricacies of arbitration in Florida." (ECF No. 18 at 10-11.) However, the Abrahams overstate the knowledge required to

understand the arbitration agreement. Although the arbitration itself very well may require expertise in Florida law, understanding what the arbitration provision stated did not. Nor did understanding the arbitration provision require knowledge of how arbitrations with the American Arbitration Association (AAA) proceed, or a knowledge of the AAA's rules. To the extent being familiar with the AAA's rules was important to Mr. Abraham in understanding (and agreeing to) the arbitration provision, as an attorney he had the resources available to him to become familiar with them.

In short, the Abrahams have not demonstrated that the arbitration provision is procedurally unconscionable.

### 2. Substantive Unconscionability

Although the Abrahams have failed to demonstrate procedural unconscionability, the court will nevertheless discuss their substantive unconscionability arguments. *See Spurgeon v. Marriott International, Inc.*, No. 16-24612-CIV-ALTONAGA/O'Sullivan, 2017 WL 896301, at *6 (S.D. Fla. March 7, 2017) ("Because both procedural *and* substantive unconscionability must be present to find an arbitration agreement enforceable, [plaintiff's] failure to establish procedural unconscionability forecloses her unconscionability argument.") (emphasis in original and internal citation omitted). "Substantive unconscionability focuses on whether the terms are 'unreasonably favorable' to the other party and 'whether the terms of the contract are so unfair that enforcement should be withheld.'" *Basulto*, 141 So. 3d at 1158 n. 4 (quoting *Williams v.*

*Walker-Thomas Furniture*, 350 F.2d 445, 449-50 (D.C. Cir. 1965)). "In other words, the reviewing court asks whether the more powerful party overreached and 'gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'" *Id.* (quoting *Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. 3d DCA 1982) (citation omitted)).

The Abrahams argue that "the terms of the Membership Agreement were unreasonably favorable to JetSmarter, because the terms unduly restricted the Plaintiffs' remedies and have expanded JetSmarter's own remedial rights relative to those of the Plaintiffs." (ECF No. 18 at 12.) They contend that the arbitration provision in the Membership Agreement requires that they arbitrate *all* of their claims against JetSmarter, but the arbitration provision in the Terms of Use "exempts JetSmarter from required arbitration of 'infringement, misappropriate [sic] or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.'" (ECF No. 18 at 9; *see id.* at 12.) (Emphasis added.) "Together these two provisions demonstrate the unconscionability of the arbitration provision, which strongly favors JetSmarter in exempting the Defendants from its own broad arbitration rules." (*Id.* at 12.)

However, the intellectual property carve-out is not entirely one-sided as it applies to *both* parties to the agreement:

> *Except that each party* retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened

> infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

(ECF No. 19-1 at 22.) (Emphasis added.) Even recognizing that it is unlikely that anyone other than JetSmarter would bring an action seeking injunctive or other equitable relief to prevent the violation of intellectual property rights, "one-sided arbitration agreements are not *necessarily* infected with substantive unconscionability—courts must look at the agreement as a whole." *Spurgeon*, 2017 WL 896301 at *6 (emphasis in original). The carve-out is limited in scope and does not encompass all of JetSmarter's potential claims against the Abrahams, most of which it, too, must pursue in arbitration. *See Id.* ("The Court acknowledges the Agreement's exclusion of claims 'involv[ing] the alleged taking, use or disclosure of trade secrets and similar confidential or propriety information' encompasses a large and important category of claims Starwood could realistically raise against its employees. …. But the exclusion clause does not encompass *all* of Starwood's potential claims[.]"); *see also Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018) ("Particularly given the otherwise mutual application of the claims subject to arbitration to both Airbnb and its users, I do not find that the separate carve-out for these intellectual property claims to be substantively unconscionable."). As such, the court finds that the intellectual property carve-out does not cause the arbitration provision to be so unfair that enforcement should be withheld.

The Abrahams also argue that the arbitration provision permits JetSmarter to unilaterally require arbitration in Broward County, Florida. (*See* ECF No. 18 at 13.) "[T]his

leaves the consumer on the hook to pay for travel to Florida and an attorney licensed in Florida and skilled in Florida's arbitration practices, no matter how minor the dispute." (*Id.*) However, the Abrahams have cited no case law in support of their argument, and the financial difficulty that a party might face in litigating in the selected forum is not a sufficient ground by itself to refuse to enforce a valid arbitration agreement. *Donado v. MRC Express, Inc.*, No. 17-24032-Civ-Scola, 2018 WL 318473, at *3 (S.D. Fla. Jan. 4, 2018). Also, the facts of this case confirm that arbitration in Florida is reasonable—the Abrahams own a home in Jupiter, Florida (ECF No. 23-1) and regularly fly to Fort Lauderdale, Florida, which is why they signed up with JetSmarter in the first place. (ECF No. 1, ¶ 15).

The Abrahams further argue that "JetSmarter's arbitration clause prohibits class action activity," which acts as additional proof of its substantive unconscionability. (ECF No. 18 at 14.) However, the contention that a class action waiver "is inherently unconscionable under Florida law has been foreclosed by the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), which found that a state law prohibition on the inclusion of any class action waiver within the terms of an arbitration provision 'interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the [Federal Arbitration Act].'" *Falcon*, 2018 WL 3699336 at *5 (quoting *Concepcion*, 563 U.S. at 344); *see Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1207 (11th Cir. 2011) ("[W]e now hold that, in light of *Concepcion*, the class action waiver in the Plaintiffs' arbitration agreements is enforceable under the FAA. Insofar as Florida law

would invalidate these agreements as contrary to public policy …, such a state law would 'stand[] as an obstacle to the accomplishment and execution' of the FAA, and thus be preempted.") (internal citation omitted). Therefore, the inclusion of a class action waiver in the arbitration agreement is *not* evidence of substantive unconscionability.

In sum, the arbitration provision in JetSmarter's Membership Agreement is neither procedurally nor substantively unconscionable. As such, the court will grant defendants' motion.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss in favor of mandatory arbitration (ECF No. 12) is **granted** and this action is **dismissed**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of April, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge